**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| ROBERT A. WESOLOWSKI and CONNIE M. WESOLOWSKI, individually and on behalf of all others similarly situated, | : : : : : |
| Plaintiffs, | : CIVIL ACTION NO. : 1:13-CV-02427-RWS |
| v. | : : |
| TITLE SOURCE, INC., *et al.*, | : : |
| Defendants. | : |

**ORDER**

This case comes before the Court on Defendants' Motion to Dismiss [8] and Plaintiffs' Motion for Oral Argument [14]. After reviewing the record, the Court enters the following Order.

**Background**

In this putative class action, Plaintiffs allege that Defendants split unearned fees and engaged in the unauthorized practice of law by conducting real estate closings without proper attorney oversight. Plaintiffs Robert and Connie Wesolowski refinanced their home through Quicken Loans, Inc. on November 7, 2011, again on August 20, 2012, and a third time on January 10,

2013.  (Compl., Dkt. [1] ¶¶ 30-32.)  Quicken Loans contracted with Defendant Title Source, Inc. to perform all services necessary to complete the three closings.  (Id. ¶ 33.)  These services included: performing the title search, reviewing the title examination, issuing a closing-protection letter, obtaining tax information, preparing and reviewing the settlement statement and security deed, recording the deeds, issuing a lender's title-insurance policy, ensuring that prior loans were paid off and cancelled on the deed records, and receiving and disbursing settlement proceeds.  (Id. ¶ 34.)

Title Source hired Defendant Cook & James, LLC[1] to schedule the closings.  (Id. ¶ 36.)  Cook & James in turn hired attorney-witnesses to witness the execution of Plaintiffs' documents at each closing.  (Id.)  These attorney-witnesses performed no services other than to witness the signing of the documents.  (Id. ¶ 38.)  Before the closing, Title Source provided Plaintiffs with a document titled, "The Role of Your Signing Agent," which informed Plaintiffs, "Your signing agent is not able to give any legal advice or explain the legal purpose of the documents."  (Dkt. [1-1].)

---

[1] Plaintiffs also sue the firm's partners, Defendants A. Kara Cook and Heather James, collectively referred to herein as "Cook & James."

At each closing, Plaintiffs paid Title Source a "settlement or closing fee" in the amount of $500. (Compl., Dkt. [1] ¶ 35.) In connection with the closings, Title Source prepared Settlement Statements which reflected the $500 closing fee but did not disclose all of the fee's recipients. (Id. ¶ 40.) Plaintiffs also allege that the Settlement Statements improperly listed Defendant Michelle Ruff, Title Source's in-house counsel, as the settlement agent. (Id. ¶ 41.) Plaintiffs believe that Ms. Ruff failed to "perform all services required by a licensed Georgia attorney to perform the residential real estate closing for all 3,000 class members for whom Title Source provided settlement services." (Id. ¶ 42.) Plaintiffs allege that Title Source split the $500 fee with Cook & James and Ms. Ruff. (Id. ¶ 39.)

In addition, putative class member Richard L. Busbee refinanced a loan through Nationstar, which also contracted with Title Source to perform the same services listed above to close his loan. (Id. ¶¶ 43-45.) The Settlement Statement prepared for Mr. Busbee's closing recorded payment of a $430 closing fee. (Id. ¶ 46.) Title Source also engaged Cook & James, which hired attorney-witness Valerie Chinn to attend the closing. (Id. ¶ 47.) Again, Plaintiffs allege that Title Source split the fee with Cook & James and Ms.

Chinn.  (Id. ¶ 52.)  Moreover, the Settlement Statement listed a $300 "Attorney Fee" for Ms. Ruff, which Plaintiffs believe she split with Title Source.  (Id. ¶¶ 54, 56.)  Plaintiffs state that Ms. Ruff was improperly listed as the settlement agent and that she failed to perform all the services required by a licensed attorney to close Mr. Busbee's loan.  (Id. ¶ 55.)

Plaintiffs argue that Defendants violated Georgia law's requirement that a licensed attorney close residential real estate transactions.  See In re UPL Advisory Opinion 2003-2, 588 S.E.2d 741, 741 (Ga. Ct. App. 2003) ("[W]e have consistently held that it is the unauthorized practice of law for someone other than a duly-licensed Georgia attorney to close a real estate transaction . . . .").  Plaintiffs also contend that Defendants split fees with individuals who did not provide any services in the transaction.  Accordingly, on July 22, 2013, Plaintiffs filed this action against Defendants asserting claims under Section 8(b) of the Real Estate Settlement Procedures Act ("RESPA"), the Georgia Racketeer Influenced and Corrupt Organizations ("RICO") Act, and the Georgia Good Funds Statute.  Plaintiffs also bring a claim for unjust enrichment.  Defendants move for dismissal of all claims.

4

## Discussion[2]

**I.      Motion to Dismiss Legal Standard**

When considering a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, a federal court is to accept as true "all facts set forth in the plaintiff's complaint."  Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000) (citation omitted).  Further, the court must draw all reasonable inferences in the light most favorable to the plaintiff.  Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999); see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (internal citations omitted).  However, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' "  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' "  Id.

The United States Supreme Court has dispensed with the rule that a complaint may only be dismissed under Rule 12(b)(6) when " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

---

[2] Because the Court finds the parties' briefing adequate to resolve the issues before the Court, Plaintiffs' Motion for Oral Argument [14] is **DENIED**.

5

which would entitle him to relief.' " Twombly, 550 U.S. at 561 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  The Supreme Court has replaced that rule with the "plausibility standard," which requires that factual allegations "raise the right to relief above the speculative level." Id. at 556.  The plausibility standard "does not[, however,] impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]." Id.

"The district court generally must convert a motion to dismiss into a motion for summary judgment if it considers materials outside the complaint." D.L. Day v. Taylor, 400 F.3d 1272, 1275-76 (11th Cir. 2005); see also Fed. R. Civ. P. 12(d).  However, documents attached to a complaint are considered part of the complaint.  Fed. R. Civ. P. 10(c).  Documents "need not be physically attached to a pleading to be incorporated by reference into it; if the document's contents are alleged in a complaint and no party questions those contents, [the court] may consider such a document," provided it is central to the plaintiff's claim.  D.L. Day, 400 F.3d at 1276.  At the motion to dismiss phase, the Court may also consider "a document attached to a motion to dismiss . . . if the

6

attached document is (1) central to the plaintiff's claim and (2) undisputed." Id. (citing Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002)). "'Undisputed' means that the authenticity of the document is not challenged." Id.

## II.   Analysis

### A.   Section 8(b) of RESPA

Plaintiffs' theory of their RESPA violation is that Defendants provided no actual services related to the closings in exchange for the settlement fee. Section 8(b) of RESPA provides:

> No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

12 U.S.C. § 2607(b).

As Plaintiffs allege, "Since the conduct of a closing or settlement in Georgia by anyone other than a Georgia attorney is illegal under Georgia law, Title Source's provision of these services cannot constitute the performance of 'actual services' and Title Source was not entitled to take any split of the fee paid for the rendering of such services." (Compl., Dkt. [1] ¶ 73.) Under Plaintiffs' theory, Defendants did not perform actual services as a legal matter

7

because "the services were either not performed or not performed by a Georgia attorney," and "any agreement to pay a fee with an unlicensed party is void." (Pls.' Resp., Dkt. [13] at 16-17.) Defendants, on the other hand, maintain that they performed services within the meaning of § 8(b) of RESPA.

In support of their argument that Defendants' services were in effect void, Plaintiffs cite <u>Berchenko v. Fulton Federal Savings & Loan Ass'n of Atlanta, Inc.</u>, 261 S.E.2d 643 (Ga. 1979), in which the plaintiff claimed to be a referral agent and sought a "finders fee" from the defendant under an oral agreement to find a purchaser for a mobile home park. The plaintiff was not a licensed broker but argued that a recent statute permitted him to recover a referral fee even though he was unlicensed. <u>See</u> <u>id.</u> at 645. The Supreme Court of Georgia disagreed, holding that while the new statute allowed an unlicensed individual to make referrals, a referral agent was still required to hold a license in order to receive a fee in exchange for referral services. <u>Id.</u> For that reason, the unlicensed plaintiff could not recover a fee in his suit against the bank. <u>Id.</u> <u>Berchenko</u> therefore held that a plaintiff could not sue under a breach of contract theory to compel payment of a referral fee when the plaintiff was not entitled to one under Georgia law. <u>See also</u> <u>Amend v. 485 Props.</u>, LLC, 401

8

F.3d 1255, 1259 (11th Cir. 2005) (holding that "an agreement to pay a brokerage fee entered into with an unlicensed broker is void and unenforceable under Georgia law").

Berchenko, however, is not determinative in the instant case because Plaintiffs here assert a different cause of action created by federal statute. The Court finds the Eleventh Circuit's reasoning in Hazewood v. Foundation Financial Group, LLC, 551 F.3d 1223 (11th Cir. 2008), more helpful. In that case, the plaintiff sued under RESPA § 8(b) alleging she was charged an unlawfully high premium on her title insurance policy in violation of an Alabama price-control law. Id. at 1224. Although she acknowledged that at least a portion for the premium was for title insurance, she argued "that a *portion* of the title insurance fee was unearned or not for services actually performed." Id. at 1226 (emphasis in original). But as the Eleventh Circuit observed, "Even if the excess portion of the premium was arguably 'unearned' as a matter of Alabama law, as a factual matter it was not in exchange for nothing." Id. Citing the plain meaning of the statute's prohibition on the acceptance of fees "other than for services actually performed," the Eleventh Circuit emphasized that § 8(b) of RESPA is not "a federal remedy for

9

overcharges under state insurance laws—in circumstances when the state itself does not recognize a private right of action, at that." Id.  Thus, the court "doubt[ed] that Congress intended to create a federal remedy for violations of state price controls, either, on the theory that violations of price controls are not for services actually rendered."  Id.  Because the plaintiff had in fact received title insurance in exchange for the premium, the Eleventh Circuit affirmed the dismissal of her claim.  Id.

The present case is analogous because Plaintiffs' alleged § 8(b) violation asks the Court to deem certain services not actually performed under state law.  But like in Hazewood, this "contrived reading of the statute" goes beyond the plain text of § 8(b).  The statute makes no reference to whether services were performed in compliance with state law.  If Congress likely did not intend RESPA to create a remedy for state price-control violations, it is also doubtful that Congress intended RESPA to create a cause of action for other violations of state law as long as the fee was "not in exchange for nothing."[3]  Id.

---

[3]Furthermore, as in Hazewood, there is no cause of action under Georgia law for the alleged state-law violation here, the unauthorized practice of law. See In re UPL Advisory Opinion 2003-2, 588 S.E.2d at 741 ("It is well established that [the Georgia Supreme Court] has the inherent and exclusive authority to govern the practice of law in Georgia, including jurisdiction over the unlicensed practice of

10

Two other Eleventh Circuit cases interpreting § 8(b) of RESPA are illustrative.  In Friedman v. Market Street Mortgage Corp., 520 F.3d 1289 (11th Cir. 2008), the plaintiffs argued that they could maintain a § 8(b) claim for excessive fees.  Id. at 1297.  The Eleventh Circuit rejected that argument, stating that the plain and unambiguous language of the statute precludes such an interpretation because § 8(b) only "prohibits the charging of fees other than for services actually performed."  Id.  The court explained: "[N]othing in the language authorizes courts to divide a 'charge' into what they or some other person or entity deems to be its 'reasonable' and 'unreasonable' components.  Whatever its size, such a fee is 'for' the services rendered by the institution and received by the borrower."  Id. (quoting Kruse v. Wells Fargo Home Mortg., Inc., 383 F.3d 49, 56 (2d Cir. 2004)).  See also Hazewood, 551 F.3d at 1225 (noting that under Eleventh Circuit precedent, "for a settlement fee to be actionable, *no* services must be rendered in exchange for it").

In another fee-splitting case, Sosa v. Chase Manhattan Mortgage Corp., 348 F.3d 979 (11th Cir. 2003), the Eleventh Circuit found that the defendant had not retained an unearned fee when it charged borrowers a $50 courier fee

---

law.").

11

but paid only a portion of it to the third-party couriers it hired.  The court noted that the plaintiff failed to allege that the defendant did not perform any services; on the contrary, the court found that the defendant had performed a service for the borrowers by hiring third parties to make the deliveries.  Id. at 983-84.  Sosa thus demonstrates that hiring a contractor to perform work for which a borrower is charged is itself a service justifying a fee.

At bottom, as Friedman, Hazewood, and Sosa illustrate, as long as a defendant performs actual services for a plaintiff, there is no § 8(b) violation.  To that end, the Friedman and Hazewood courts declined to parse fees into components to assess either their reasonableness or whether certain portions were unearned.  Nor does the Eleventh Circuit recognize a § 8(b) violation even if a fee is arguably unearned as a matter of state law if "as a factual matter it was not in exchange for nothing."  Hazewood, 551 F.3d at 1226.

In view of the above case law and Plaintiffs' allegations, the Court finds that each Defendant performed a service within the meaning of RESPA §8(b).  Title Source performed numerous services, such as performing title searches, coordinating all settlement efforts, preparing settlement documents, and hiring the firm Cook & James.  Cook & James in turn hired attorney-witnesses to

12

witness the execution of the documents related to Plaintiffs' loans.  Finally, Plaintiffs fail to allege that Ms. Ruff did not perform *any* services, alleging only that she did not perform *all* services required by a licensed Georgia attorney to perform the closings.  Moreover, Defendants have attached to their Motion to Dismiss two documents showing that Ms. Ruff performed a service by paying Plaintiffs settlement proceeds out of her IOLTA account.  (Dkt. [8-2, 8-3].)[4] Plaintiffs acknowledge proceeding with the closings, and they succeeded in refinancing their home each time.  These allegations thus demonstrate that no Defendant received a portion of the fee in exchange for nothing.  In sum, because Plaintiffs fail to allege that Defendants performed no services, Plaintiffs' RESPA § 8(b) claim fails as a matter of law and is due to be **DISMISSED**.

---

[4]Plaintiffs assert that it is improper to rely on these documents at the motion to dismiss stage because the exhibits were not attached to the Complaint and Plaintiffs have not conceded their authenticity.  For the Court to consider the IOLTA documents on a motion to dismiss, the documents must be central to Plaintiffs' claims and undisputed.  See D.L. Day, 400 F.3d at 1276.  The Court finds that these documents are central to the claims that Ms. Ruff did not perform any services in connection with the closings, and the Court further finds that Plaintiffs have failed to call into question the documents' authenticity.  (See Pls.' Resp., Dkt. [13] at 10-12.)

13

B.     Supplemental Jurisdiction

Having dismissed Plaintiffs' sole federal claim, and because Plaintiffs do not allege diversity jurisdiction, the Court no longer has original jurisdiction over this action.  Under 28 U.S.C. § 1367, a district court may exercise supplemental jurisdiction over state-law claims related to any claims over which the court has original jurisdiction.  But § 1367 is clear in providing that the district court may decline supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  Indeed, the United States Supreme Court has held that "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction."  Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988).  And the Eleventh Circuit has held that federal courts are "strongly encourage[d] or even require[d]" to dismiss state-law claims "if the federal claims are dismissed prior to trial."  Ingram v. Sch. Bd. Of Miami-Dade Cnty., 167 F. App'x 107, 108-09 (11th Cir. 2006) (quoting Mergens v. Dreyfoos, 166 F.3d 1114, 1119 (11th Cir. 1999)).

14

This case is still in its early stages. Indeed, no discovery has yet taken place. (See Order, Dkt. [11] (extending pre-trial discovery deadlines until 20 days after Defendants file their answers).) Therefore, the Court declines supplemental jurisdiction over the remaining state-law claims in this case. As such, Plaintiffs' state-law claims are **DISMISSED** for lack of subject-matter jurisdiction.

## Conclusion

For the foregoing reasons, Plaintiffs' Motion for Oral Argument [14] is **DENIED**, and Defendants' Motion to Dismiss [8] is **GRANTED**. Plaintiffs' state-law claims are **DISMISSED** for lack of subject-matter jurisdiction.

**SO ORDERED**, this   22nd   day of May, 2014.

_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE